**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 5:15CV93-RJC-DSC**

| | |
|---|---|
| LINDA RICHARDSON MINTON,<br>            Plaintiff,<br><br>       vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security Administration,<br>            Defendant. | )<br>)<br>)<br>)   **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and Defendant's "Motion for Summary Judgment" (document #15), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On October 2, 2012, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") alleging that she became disabled on March 7, 2011. She later amended her onset date to September 23, 2012. (Tr. 12, 36, 238-52). The applications were denied initially and upon reconsideration. (Tr. 135-40, 149-66). Plaintiff

1

requested a hearing which was held on December 3, 2014. (Tr. 32-59).

On January 15, 2015, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled. (Tr. 12-26). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14). The ALJ also found that Plaintiff suffered from degenerative joint disease, rheumatoid arthritis, obesity, depression, and borderline intellectual functioning (Tr. 14-15), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14-18). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform light work[2] limited to occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; frequent handling and fingering; and no climbing ladders, ropes, or scaffolds. Plaintiff was also limited to unskilled work and simple, routine, repetitive tasks with an hourly sit/stand option. She was limited to occasional contact with co-workers, supervisors and the public. (Tr. 18-24.) The ALJ found that Plaintiff could not perform her past relevant work. (Tr. 24).

The ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as inspector, garment sorter and cleaner that Plaintiff could perform. The V.E. testified that more than 20,000 of those jobs were available locally and more than 670,000 were available nationally. (Tr. 25). These numbers reflect

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

a thirty percent reduction required by the sit/stand limitation, which the V.E. stated was not accounted for in the Dictionary of Occupational Titles ("DOT"). Id.

Based upon this testimony, the ALJ found that there were a significant number of jobs in the local and national economy that Plaintiff could perform. (Tr. 26). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 26).

On May 21, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-5).

Plaintiff filed the present action on July 23, 2015. She assigns error to the ALJ's evaluations of the records and opinions of Doctors Bob Wodecki and Michelle Coleman. She also assigns error to the ALJ's evaluation of her credibility and RFC. Plaintiff's Brief at 3 (document #14). Plaintiff also contends that the ALJ failed to elicit credible testimony from the V.E. Id.

The parties' Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v.

Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[3] as that term of art is defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish her RFC by demonstrating how those impairments impact her functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history. The ALJ discussed all relevant functions except for those that were uncontested. The ALJ specifically addressed handling, reaching, climbing, balancing, stooping, crouching, kneeling, crawling, hazards, unskilled work, and contact with others in the workplace. (Tr. 18.) Plaintiff has not identified any relevant function that the ALJ omitted.

Plaintiff assigns error to the ALJ's credibility determination. A review of the ALJ's decision reveals that his credibility determination is supported by substantial evidence.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ

5

must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's degenerative joint disease, rheumatoid arthritis, obesity, depression, and borderline intellectual functioning – which could be expected to produce some of the symptoms she claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

After review of Plaintiff's testimony, the ALJ discussed the relevant medical and non-medical evidence. (Tr. 19-24.) The ALJ found that Plaintiff's complaints were "not well

supported by the objective medical evidence in the record," including physical examinations that revealed an absence of significant swelling or synovitis in her joints, x-rays showing "only minimal changes," and "repeated normal neurological examinations." (Tr. 24, Tr. 508 (normal neurological findings), 510 ("minimal" spurs shown on hand and wrist x-rays; normal back x-ray), 524 (no joint changes or deformities, no effusion, "mild" pain, no tenderness in hands); 526 (decreased range of motion in shoulders but no instability or point tenderness), 550 (no "clinically pertinent findings" other than reports of pain and stiffness), 553 (same), 610 ("minor difficulties rising from a seated position, normal gait, and intact balance"), 712 (no significant swelling or edema)).

The ALJ cited x-rays taken on February 21, 2012 showing only "minimal," "slight," or "early" changes in Plaintiff's hands, wrists, feet, and lumbar spine. (Tr. 19 (citing Tr. 386)). A September 23, 2013 MRI showed no evidence of a rotator cuff tear. (Tr. 20 (citing Tr. 596, 690).) The ALJ also discussed March 27, 2014 x-rays that revealed only "minimal" findings in Plaintiff's knees, hands, wrists, feet, and ankles. (Tr. 20 (citing Tr. 596, 708).) As the ALJ acknowledged in his decision, these x-rays were consistent with osteoarthritis, but did not support the extreme degree of limitation alleged. (Tr. 24.)

The ALJ also cited medical opinion evidence supporting his conclusions. (Tr. 23-24.) He discussed in detail Dr. Michelle Coleman's findings including her opinion that Plaintiff could only stand and walk for six hours in an eight-hour workday due to "complaints of pain in her ankles and feet." (Tr. 23 (citing Tr. 526-527).) He considered Dr. Carla Duszlak's psychiatric evaluation and noted Dr. Duszlak's statements that Plaintiff could perform simple, repetitive tasks; might need "special or additional supervision" with new tasks; had a reduced capacity for dealing with stress; and might miss work due to pain, but not due to any mental limitations. (Tr. 23-24 (citing Tr. 497-502).) In his discussion of Dr. Duszlak's report, the ALJ noted that Plaintiff had not

7

received treatment for any mental impairments and was never prescribed psychotropic medications. She had never been hospitalized or presented to the emergency room for any mental impairments. (Tr. 24.) The ALJ also discussed third-party reports from Plaintiff's ex-husband and niece. He accorded them limited weight because they were inconsistent with other opinion evidence and the observations by Plaintiff's physicians. (Tr. 24 (citing Tr. 292-299, 556-559).)

The ALJ did not limit his analysis to the evidence supporting his conclusions. He acknowledged evidence arguably in conflict with his findings, including evidence of swelling in the treatment notes. (Tr. 21 (noting "chronic aching pain and swelling in her ankles bilaterally" and "mild swelling")). However, he also noted instances where there was no swelling, no reports of swelling by Plaintiff, and normal examination findings. (Tr. 20, 339, 470, 477, 480, 487, 508, 511-512, 517-518, 537, 550, 695, 697.)

Plaintiff argues that her subjective allegations are supported by the fact that her physicians prescribed narcotic pain medication. She cites no authority to support this proposition. To the contrary, treatment with medication refutes her claim. Dunn v. Colvin, 607 F. App'x 264, 274 (4th Cir. 2015) (symptoms that can be treated with medication are not disabling) (citing Gross v. Heckler, 785 F.2d 1163, 1165-1166 (4th Cir. 1986)). The use of relatively conservative treatment, such as prescription medication, shows that Plaintiff's impairments were not as severe as alleged. Mickles v. Shalala, 29 F.3d 918, 929-30 (4th Cir. 1994) (stating that Social Security regulations require the Commissioner to consider "the medication and medical treatment a claimant receives to alleviate her symptoms," and deeming "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought . . . highly probative of the claimant's credibility") (Luttig, J., concurring); see also Farrior v. Astrue, No. 7:10-CV-164-FL, 2011 WL 3157150, at *5 (E.D.N.C. July 26, 2011) (affirming ALJ's reliance on

8

conservative treatment to support a finding that the claimant's allegations were not fully credible); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ cited treatment notes attributing improvement in Plaintiff's condition to her medication. On October 7, 2014, she reported that her medication improved her condition to the point where she could "stay active at home" and that her pain was "well managed." (Tr. 21 (citing Tr. 741).)

The ALJ considered Plaintiff's testimony and identified which of her statements he found credible and which were not. The ALJ found that Plaintiff's statements were only partially credible and cited to substantial evidence in support of his findings.

Plaintiff asserts that the ALJ failed to give proper weight to the records and opinions of Doctors Wodecki and Coleman. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Plaintiff concedes that "her treating physicians did not perform [Residual Functional Capacity] evaluations." Her assignments of error related to Dr. Wodecki are based on his treatment findings. Plaintiff's Brief at 8 (document #14). Dr. Wodecki's treatment notes only reported Plaintiff's subjective statements regarding pain and stiffness and noted when swelling was present. (Tr. 337, 343.)

9

The ALJ reviewed the relevant evidence and concluded that, as a whole, it supported a finding that Plaintiff could perform light work. (Tr. 20.) Substantial evidence supports this conclusion, including the x-rays, MRI, examination findings and Plaintiff's statements. As discussed above, the evidence established that her symptoms improved and allowed her to remain active with medication. (Tr. 569 (stating that she "continues to do well with her medications"), 741 (noting Plaintiff's statement that her pain was "well managed with her medication" and she could "stay active at home with the help of her medications").)

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. She contends that the ALJ included findings not incorporated in Dr. Coleman's opinion, and gave them significant weight. (Tr. 20.) In most instances where the RFC differed from Dr. Coleman's findings, it was more rather than less restrictive. For example, the ALJ included a sit/stand option, which Dr. Coleman did not mention. (Tr. 18.) He also included restrictions on Plaintiff's ability to stoop or climb, neither of which Dr. Coleman included. (Tr. 527.) The ALJ also added a restriction on Plaintiff's ability to tolerate exposure to workplace hazards, which Dr. Coleman did not mention. (Tr. 18, 527.)

The only less restrictive limitation included in the RFC was the ALJ's conclusion that Plaintiff could tolerate frequent reaching. (Tr. 18.) Dr. Coleman found that Plaintiff could perform only occasional reaching with her right arm, with no limitation in her left arm. (Tr. 527.) Substantial evidence supports the ALJ's decision to restrict Plaintiff to frequent reaching bilaterally. (Tr. 18.) The ALJ relied on evidence showing only mild problems with her right upper extremity, and no impairment with her left upper extremity. (Tr. 386 (February 21, 2012 x-ray showing "minimal" findings), 690 (MRI taken on September 23, 2013 showing no tear, or other acute problem that might have required a more restrictive limitation).) Other treatment notes

10

support this conclusion. (Tr. 518 (no allegation of left shoulder pain and shoulders were not even included in the joint examination), 533 (no allegation of left shoulder pain), 543 (same), 552 (same).) The restriction to bilateral reaching was supported by substantial evidence in the record.

Plaintiff also asserts that the ALJ never discussed her ability to perform for a full workday. To the contrary, the ALJ incorporated a durational limitation for the relevant tasks. The ALJ found that she could meet the demands of light or sedentary work. (Tr. 18.) Light work requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). This is consistent with the ALJ's decision to accord significant weight to Dr. Coleman's opinion that Plaintiff could sit without limitation and stand or walk up to six hours a day. (Tr. 527.) The ALJ also found that she could frequently[4] handle, finger and reach bilaterally. (Tr. 18.) He found that she could occasionally climb, balance, stoop, crouch, kneel, or crawl. (Tr. 18.) The ALJ found that she could not work around moving machinery or unprotected heights. She required an option to change from standing to sitting every hour, and could perform only unskilled work allowing for occasional contact with the public, coworkers, and supervisors. (Tr. 18.)

As the ALJ's discussion of the evidence makes clear, Dr. Coleman's report was given significant weight because it was consistent with treatment notes, objective findings, and other evidence. Dr. Coleman's statement that Plaintiff can sit without limitation and walk for up to six hours in an eight-hour workday is consistent with the examination findings of pain in her ankles and feet as well as the doctor's statement that Plaintiff's cane is not a "medical necessity." (Tr. 524). It is also consistent with numerous treatment notes throughout the record that Ms. Minton's

---

4 In this context, "occasional" means up to one-third of an eight-hour workday, and "frequently" means up to two-thirds of an eight-hour workday. (Tr. 18; *see* SSR 83-10, 1983 WL 31251, at *6 (1983).)

condition, while severe, is not so severe as to preclude all work. (Tr. 539 (noting improvement with medication), 619 (discussing improvements in "overall functioning" and Plaintiff's ability to "stay active"), 741 (she was "active at home" on medication, her pain was "well managed with medication," and she was "active at home with the help of her medication").) It is further consistent with grossly normal x-rays of Plaintiff's back, leg, ankles, and feet. (Tr. 386, 708.)

The evidence is also consistent with Dr. Coleman's opinion on Plaintiff's ability to use her upper extremities for work-related functions such as lifting, carrying, reaching, and handling. (Tr. 526-527.) While Plaintiff had significant issues with pain, the examination findings and objective evidence establish that they were not so severe as to preclude all work. (Tr. 386, 619, 708, 741.)

Finally, Plaintiff assigns error to the ALJ's reliance on the V.E.'s testimony. A V.E.'s testimony is not credible unless it is "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (Pl. Memo 18). A hypothetical question is unimpeachable if it "adequately reflect[s] a residual functional capacity for which the ALJ had sufficient evidence." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). Plaintiff's assignments of error at step five are a rehash of her arguments about the RFC determination discussed above. Accordingly, this assignment of error must be overruled as well.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th

Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: May 31, 2016

David S. Cayer
United States Magistrate Judge